**SAHA THAI STEEL PIPE CO., LTD. and Thai Steel Pipe Industry Co., Ltd., Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

**ATCOR, Inc., Sawhill Division of Cyclops Corp., and Wheatland Tube Corp., Intervenors.**

**No. 86–04–00482.**

United States Court of International Trade.

May 26, 1987.

Willkie Farr & Gallagher (William H. Barringer), Washington, D.C. for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch (A. David Lafer), Civil Division, U.S. Dept. of Justice, Washington, D.C. for defendant.

## MEMORANDUM OPINION

RESTANI, Judge:

Plaintiffs seek clarification or amendment of a recent opinion of this court, *Saha Thai Steel Pipe Co. v. United States*, 11 CIT ——, 661 F.Supp. 1198 (1987). In that opinion, the court granted a protective order with respect to numerous interrogatories served upon defendant by plaintiffs. The court concluded that plaintiffs' discovery requests were improper because plaintiffs had failed to make a sufficient showing of bad faith on the part of the government and had failed to demonstrate a reasonable basis to believe that the administrative record was incomplete. 661 F.Supp. 1198, at 1202–03. Plaintiffs seek clarification of the opinion because it did not specifically address plaintiffs' request for the production of certain documents.[1] Defendant contends that plaintiffs' motion is merely a disguised petition for rehearing, and argues that the court's reasoning was sufficiently broad to encompass the requests for production of documents that plaintiffs now raise.

The information sought in plaintiffs' document requests is different from the information sought in the interrogatories. In their interrogatories plaintiffs sought direct evidence of *ex parte* contacts between Commerce officials and individuals having an interest in the outcome of the proceeding. Plaintiffs also sought to probe the thought processes of Commerce officials responsible for calculation of margins. In their requests for production of documents, however, plaintiffs seek to obtain documents containing general policy statements about the President's Steel Program (Document Request 4) and the relationship between the steel program and unfair trade cases involving countries that have not signed Voluntary Restraint Agreements (VRA) (Document Requests 5–10).[2] Plain-

---

**1.** Plaintiffs recognize that the court's reasoning in 661 F.Supp. 1198 was dispositive of certain document requests, and therefore urge the court to consider only document requests numbered 3–10.

**2.** In their brief, plaintiffs also cite their earlier allegation that the record was incomplete be-

cause it did not include documents relating to "the dual roles of the Deputy Assistant Secretary of Commerce for Import Administration, who is responsible for achieving the goals of the President's Steel Program and conducting the antidumping duty investigation...." Plaintiffs' motion at 3, n. 1, citing 661 F.Supp. 1198, at 1202–03. The discovery requests at issue here do not

tiffs' First Request for Production of Documents [Plaintiffs' Request] at 9–10. These requests neither intrude upon the mental processes of Commerce officials, nor do they necessarily derive their relevance from an implicit assumption that the government has acted in bad faith. *See* 661 F.Supp. 1198, at 1203.

Nevertheless, the conclusion reached in 661 F.Supp. 1198, that there was no reasonable basis to believe the record was incomplete, provides protection as to both the interrogatories and the document requests. Plaintiffs again argue that the record should contain references to statements by Commerce officials that unfair trade actions might be used to limit imports from countries that had not signed VRA's with the United States. *See* 661 F.Supp. 1198, at 1201 (discussing the content of the statements by Commerce officials). The statements presented to the court, however, refer only to the initiation of actions against non-signers in order to curb unfairly traded imports. Their relevance is highly questionable in this case, which was initiated by domestic interests prior to the time the statements were made.[3] Moreover, the statements cannot reasonably be interpreted as an indication from Commerce that it would unlawfully inflate the size of margins in its ongoing or future investigations. This inference of bad faith is similarly unsubstantiated by plaintiff. *See* 661 F.Supp.

1198, at 1202. In sum, plaintiffs have simply failed to provide a reasonable basis for their allegation that the requested documents exist and are relevant to this proceeding.[4]

Although the court has found no reasonable basis to believe the record is incomplete, it is always possible that a document which should have been made a part of the record, such as a non-public document describing policies affecting the conduct of the investigation, will be discovered. Thus far, the Commerce Department has attested to the effect that no such documents exist. Of course, if defendants discover such documents during the course of these proceedings, the government is under a continuing obligation to produce them to complete the administrative record.

SO ORDERED.

---

specifically ask for documents regarding the dual roles of Commerce Department officials. To the extent that plaintiffs' document requests indirectly seek access to such information, the reasoning in this opinion disposes of this request as well.

3. The statements cited by plaintiffs were made on April 5, 1985, and during the month of February 1986. See 661 F.Supp. 1198, at 1201. The petitions initiating this investigation were filed on February 28, 1985. *See* 50 Fed.Reg. 10866, 10867 (1985) (institution of investigation).

4. Another one of plaintiffs' requests asks for "all documents containing or evidencing prior drafts of the cost verification reports prepared by [a specified Commerce employee] for [the Department of Commerce] in the dumping investigation." Plaintiffs' Request at 9, para. 3. Plaintiffs allege that the cost verification "report originally submitted to Commerce contained

conclusions and language that substantially differed from the final version of the report, and was subsequently rewritten or edited by Commerce officials not present at verification." Plaintiffs' motion at 10. Plaintiffs base this allegation on information received from the author of the original report. Plaintiffs ask that the earlier draft be included in the record because it "may represent a fairer representation of the verifier's conclusions...." *Id.*

In their earlier papers, plaintiffs had the opportunity to inform the court of the facts supporting their motion, but failed to do so. Although such evidence might have been helpful to the court when it made its initial determination regarding the overall completeness of the record, the court will not sanction waste of legal and judicial resources by allowing plaintiffs to upset that decision with belated argument. The court, however, will require the government to respond to this specific request by providing the document if it exists or by claiming whatever privilege may be applicable.